IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ERIC TAYLOR, | : | |
| | : | Civil Action File No. |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| ANSLEY GOLF CLUB, INC., | : | |
| And JMG TENNIS, INC., | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

Plaintiff Eric Taylor ("Taylor") brings this Complaint against Defendants Ansley Golf Club, Inc., ("Ansley") and JMG Tennis, Inc., ("JMG") and shows the Court as follows:

## Introduction

1.

This is a wage and hour case.

2.

Ansley and JMG employed Taylor as a tennis professional from February 2, 2021 through July 9, 2022. At all times from February 2, 2021 through July 9, 2022 ("the Relevant Time Period"), Ansley misclassified Taylor as exempt from the FLSA's Maximum Hour provisions, and JMG misclassified Taylor as an independent contractor, thereby depriving him of an overtime premium for time worked in excess of forty (40) hours in a work week.

**Jurisdiction and Venue**

3.

This Court has subject matter jurisdiction over the present action under Article III, § 2 of the United States Constitution, FLSA §16(b), 29 U.S.C. § 216(b) and 28 U. S.C § 1331, because this case arises under the FLSA, a federal statute that affects interstate commerce.

4.

Venue properly lies in the Northern District of Georgia under 28 U.S.C. § 1391 because Ansley and JMG are located within this judicial district and a substantial portion of the events giving rise to the claims herein arose in this judicial district.

**The Parties**

5.

Taylor is a natural person residing in Cumming, Georgia.

6.

Ansley is a domestic for-profit corporation organized under the laws of the State of Georgia.

7.

JMG is a domestic for-profit corporation organized under the laws of the State of Georgia.

8.

Ansley employed Taylor as a tennis professional throughout the Relevant Time Period.

9.

JMG employed Taylor as a tennis professional throughout the Relevant Time Period.

10.

Ansley and JMG jointly employed Taylor as a tennis professional throughout the Relevant Time Period.

11.

Throughout the Relevant Time Period, Taylor was an "employee" of Ansley within the meaning of FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

12.

Throughout the Relevant Time Period, Taylor was an "employee" of JMG within the meaning of FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

13.

Throughout the Relevant Time Period, Taylor was an "employee" of Ansley and JMG within the meaning of FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1.

14.

Throughout the Relevant Time Period, Ansley has been an "employer" of Taylor within the meaning of FLSA § 3(d), 29 U.S.C. §203(d).

15.

Throughout the Relevant Time Period, JMG has been an "employer" of Taylor within the meaning of FLSA § 3(d), 29 U.S.C. §203(d).

16.

Ansley is subject to the personal jurisdiction of this Court.

17.

JMG is subject to the personal jurisdiction of this Court.

18.

Ansley may be served with process through its registered agent, A. Lee Parks at 75 14th Street, 26th Floor, Atlanta, Georgia, 30309.

19.

JMG may be served with process through its registered agent, James Matthew Grayson at 196 Montgomery Ferry Drive, Atlanta, Georgia, 30309.

**Joint Employer Allegations**

20.

Throughout the Relevant Time Period, Ansley and JMG shared the services of Taylor.

21.

Throughout the Relevant Time Period, Ansley and JMG acted directly or indirectly in the interest of each other with respect to Taylor.

22.

Throughout the Relevant Time Period, Taylor was under the direct control of Ansley and JMG.

23.

Throughout the Relevant Time Period, Ansley and JMG exercised joint control over Taylor.

24.

Throughout the Relevant Time Period, managers and/or supervisors of Ansley and JMG supervised and/or inspected the work performed by Plaintiffs.

25.

Throughout the Relevant Time Period, Taylor performed services as a tennis professional simultaneously for Ansley and JMG.

26.

Throughout the Relevant Time Period, Ansley and JMG utilized the same principal office address.

27.

Throughout the Relevant Time Period, Ansley and JMG were engaged in the business, among other things, of providing tennis instruction, and sponsoring tennis leagues and tennis summer camps for the members of the Ansley Golf Club.

28.

Throughout the Relevant Time Period, Ansley and JMG were a joint employer of Taylor within the meaning of the FLSA.

29.

Throughout the Relevant Time Period, Ansley and JMG comprised a single "enterprise engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

30.

Throughout the Relevant Time Period, Ansley and JMG were related enterprises.

31.

Throughout the Relevant Time Period, Ansley and JMG operated under a unified operation or common control.

32.

Throughout the Relevant Time Period, Ansley and JMG performed a common business purpose.

33.

Throughout the Relevant Time Period, Ansley and JMG jointly provided tennis instruction and sponsoring tennis leagues and tennis summer camps for the members of the Ansley Golf Club.

**Enterprise Coverage**

34.

In 2021, Ansley had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

35.

In 2022, Ansley is projected to have an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

36.

In 2021, Ansley and JMG jointly had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

37.

In 2022, Ansley and JMG are jointly projected to have an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

38.

Throughout the Relevant Time Period, Ansley has been an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of FLSA, § 6(a), 29 U.S.C. § 206 (a) and FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

39.

Throughout the Relevant Time Period, JMG has been an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of FLSA, § 6(a), 29 U.S.C. § 206 (a) and FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

40.

Throughout the Relevant Time Period, Ansley and JMG have been an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of FLSA, § 6(a), 29 U.S.C. § 206 (a) and FLSA, § 7(a)(1), 29 U.S.C. § 207.

41.

Throughout 2021, Ansley had two or more "employees engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

42.

Throughout 2022 to the date of the initiation of this action, Ansley had two or more "employees engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

43.

Throughout 2021, JMG had two or more "employees engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

44.

Throughout 2022 to the date of the initiation of this action, JMG had two or more "employees engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

45.

Throughout 2021, Ansley and JMG jointly had two or more "employees engaged in commerce" within the meaning of defined by 29 U.S.C. § 203(s)(1)(A).

46.

Throughout 2022 to the date of the initiation of this action, Ansley and JMG jointly had two or more "employees engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

47.

Throughout the Relevant Time Period, Taylor and other employees of Ansley handled goods which moved in interstate commerce in the furtherance of the commercial purpose of Ansley including tennis balls and racquets.

48.

Throughout the Relevant Time Period, Taylor and other employees of JMG handled goods which moved in interstate commerce in the furtherance of the commercial purpose of JMG including tennis balls and racquets.

49.

Throughout 2021, Ansley had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." within the meaning of 29 U.S.C. § 203(s)(1)(A).

50.

Throughout 2022 to the date of the initiation of this action, Ansley had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" within the meaning of 29 U.S.C. § 203(s)(1)(A).

51.

Throughout 2021, JMG had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" within the meaning of 29 U.S.C. § 203(s)(1)(A).

52.

Throughout 2022 to the date of the initiation of this action, JMG had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" within the meaning of 29 U.S.C. § 203(s)(1)(A).

53.

Throughout 2021, Ansley and JMG jointly had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" within the meaning of 29 U.S.C. § 203(s)(1)(A).

54.

Throughout 2022 to the date of the initiation of this action, Ansley and JMG jointly had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" within the meaning of 29 U.S.C. § 203(s)(1)(A).

**Lack of Exemption**

55.

Throughout the Relevant Time Period, Ansley employed Taylor as a tennis professional.

56.

Throughout the Relevant Time Period, JMG employed Taylor as a tennis professional.

10

57.

Throughout the Relevant Time Period, Taylor was not exempt from the maximum hour requirements of the FLSA by reason of any FLSA exemption.

58.

Throughout the Relevant Time Period, Ansley did not employ Taylor as a bona fide learned professional within the meaning of 29 USC § 213 (a)(1).

59.

Throughout the Relevant Time Period, Taylor did not perform work requiring advanced knowledge.

60.

Throughout the Relevant Time Period, Taylor did not perform work requiring advanced knowledge in a field of science or learning.

61.

Throughout the Relevant Time Period, Taylor did not perform work requiring advanced knowledge in a field of science or learning customarily acquired by a long course of specialized intellectual instruction.

62.

Throughout the Relevant Time Period, Taylor did not have a primary duty that included the management of Ansley or any division of Ansley.

63.

Throughout the Relevant Time Period, Taylor did not supervise two or more employees.

64.

Throughout the Relevant Time Period, Taylor did not have a primary duty that involved the exercise of independent judgment and discretion with regard to matters of significance to Ansley or its members.

65.

Throughout the Relevant Time Period, Ansley classified Taylor as a learned professional.

66.

Throughout the Relevant Time Period, Ansley misclassified Taylor as a learned professional.

67.

Throughout the Relevant Time Period, Ansley misclassified Taylor as a learned professional in order to evade the FLSA's Maximum Hours requirements.

68.

Ansley failed to rely on advice of legal counsel when it classified Taylor as a learned professional.

69.

Ansley failed to rely on any ruling, regulation or advisory opinion when it classified Taylor as a learned professional.

**Misclassification as Independent Contractor**

70.

JMG classified Taylor as an independent contractor.

12

71.

JMG failed to rely on advice of legal counsel when it classified Taylor as an independent contractor.

72.

JMG failed to rely on any ruling, regulation or advisory opinion when it classified Taylor as an independent contractor.

73.

During the Relevant Time Period, JMG annually created and issued to Taylor and the Internal Revenue Service an IRS Form 1099-MISC reflecting the amount JMG paid to Taylor in the previous calendar year.

74.

Throughout the Relevant Time Period, JMG exercised control over the time that Taylor worked.

75.

Throughout the Relevant Time Period, JMG exercised control over the manner in which Taylor worked.

76.

Throughout the Relevant Time Period, Taylor did not solicit customers on his own behalf.

77.

Throughout the Relevant Time Period, all of Plaintiff's efforts were directed at serving the members of the Ansley Golf Club.

78.

Throughout the Relevant Time Period, Defendants provided Plaintiff with all materials and equipment necessary for him to perform his job duties as a tennis professional including, but not limited to, tennis balls and racquets.

79.

Throughout the Relevant Time Period, Defendants required Taylor to wear articles of clothing including, but not limited to shorts, shirts, and hats with the Ansley logo while performing work on behalf of Defendants.

80.

Throughout the Relevant Time Period, Taylor did not advertise on his own behalf in connection with services as a tennis professional.

81.

Throughout the Relevant Time Period, Taylor did not make any significant investments into his work such that he shared any significant risk of loss.

82.

Throughout the Relevant Time Period, JMG bore all costs associated with advertising, marketing, and promoting the business of JMG.

83.

Throughout the Relevant Time Period, Taylor was economically dependent on JMG for his livelihood.

84.

Throughout the Relevant Time Period, Taylor did not exercise independent business judgment in connection with his work for JMG.

14

85.

Throughout the Relevant Time Period, JMG did not permit Taylor to subcontract out his work or hire employees to perform his job duties.

86.

Throughout the Relevant Time Period, JMG negotiated contracts or payment arrangement for the club members that Taylor served without input or direction from Taylor.

87.

Throughout the Relevant Time Period Taylor's opportunity for profit or loss did not depend on Taylor's managerial skill.

88.

Throughout the Relevant Time Period, Taylor worked for Defendants on a consistent and full-time basis.

89.

Throughout the Relevant Time Period, JMG's sole business was providing tennis lessons and sponsoring tennis leagues and tennis summer camps.

90.

Throughout the Relevant Time Period, the work performed by Taylor was an integral part of JMG's business.

91.

During the Relevant Time Period, JMG classified Taylor as an independent contractor.

92.

During the Relevant Time Period, JMG misclassified Taylor as independent contractor.

93.

During the Relevant Time Period, JMG misclassified Taylor as independent contractor in order to evade the FLSA's Maximum Hours requirements.

94.

Throughout the Relevant Time Period, Taylor was an "employee" of JMG within the meaning of FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

95.

Throughout the Relevant Time Period, JMG was an "employer" of Taylor within the meaning of FLSA § 3(d), 29 U.S.C. §203(d).

**Additional Factual Allegations**

96.

Throughout the Relevant Time Period, Defendants compensated Taylor through payment of weekly salary augmented by commission equivalent to a percentage of the revenue generated because of Taylor's work as a tennis professional.

97.

Throughout the Relevant Time Period, Taylor regularly worked in excess of forty hours in a work week as a tennis professional on behalf of Defendants.

98.

Throughout the Relevant Time Period, Defendants aware of the actual number of hours Taylor worked.

99.

Ansley knew or should have known that the FLSA applied to Taylor.

100.

JMG knew or should have known that the FLSA applied to Taylor.

101.

Ansley knew or should have known that Taylor was entitled to FLSA overtime protections.

102.

JMG knew or should have known that Taylor was entitled to FLSA overtime protections.

103.

FLSA § 7, 29 U.S.C. § 207, requires that Defendants compensate Taylor at a rate of one–and–one–half times his regular rate for all time worked in excess of forty (40) hours in a work week.

104.

Throughout the Relevant Time Period, Defendants failed to compensate Taylor at one-half of his regular rate for time worked in excess of forty hours in each week.

105.

Throughout the Relevant Time Period, Defendants willfully failed to compensate Taylor at one-half of his regular rate for time worked in excess of forty hours in each week.

## COUNT ONE

## Failure to Pay Overtime in Violation of 29 U.S.C. § 207

106.

The allegations in paragraphs 1-105 above are incorporated herein by reference as if repeated *verbatim*.

107.

Throughout the Relevant Time Period, Taylor was an employee covered by the FLSA and entitled to the overtime protections set forth in FLSA § 7(a), 29 U.S.C. § 207(a).

108.

Throughout the Relevant Time Period, Taylor regularly worked in excess of forty (40) hours during each work week.

109.

Throughout the Relevant Time Period, Defendants failed to pay Taylor at one-and-one-half times his regular rate for time worked in excess of forty (40) hours during each work week.

110.

Throughout the Relevant Time Period, Defendants willfully failed to pay Taylor at one–and–one–half times his regular rate for work in excess of forty (40) during each work week.

111.

As a result of Defendants' failure to pay overtime compensation as alleged above, Taylor is entitled to payment of due but unpaid overtime in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

112.

As a result of Defendants' willful failure to pay overtime compensation as alleged above, Taylor is entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

113.

As a result of Defendants' failure to pay overtime compensation as alleged above, Taylor is entitled to his litigation costs, including his reasonable attorneys' fees in accordance with FLSA § 16(b); 29 U.S.C. § 216(b).

WHEREFORE, Taylor respectfully prays:

1. That he be awarded an equivalent to his due but unpaid overtime compensation in an amount to be determined at trial against Ansley and JMG, jointly and severally;

2. That he be awarded an additional like amount as liquidated damages against Ansley and JMG, jointly and severally;

3. That he be awarded his costs of litigation, including his reasonable attorneys' fees against Ansley and JMG, jointly and severally;

4. That he be awarded nominal damages against Ansley and JMG, jointly and severally;

5. That he be awarded prejudgment interest as allowed by law; and

6. For such other and further relief as the Court deems just and proper.

Respectfully submitted,

**DeLONG, CALDWELL, BRIDGERS, FITZPATRICK & BENJAMIN LLC**

*/s/ Kevin D. Fitzpatrick, Jr.*
Kevin D. Fitzpatrick, Jr.
Georgia Bar No. 262375
*/s/ Mitchell D. Benjamin*
Mitchell D. Benjamin
Georgia Bar No. 049888

101 Marietta Street, NW
Suite 2650
Atlanta, Georgia 30303                        COUNSEL FOR PLAINTIFF
(404) 979-3150        Telephone
(404) 979-3170        Facsimile
kevin.fitzpatrick@dcbflegal.com
benjamin@dcbflegal.com